UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                     Civil No. 10-4823(DSD/TNL)

Jeff Knutson,

          Plaintiff,

v.                                                          **ORDER**

Schwan's Home Service, Inc. and
The Schwan Food Company,

          Defendants.


     Mark G. Stephenson, Esq. and Stephenson & Sutcliffe, PA,
     1635 Greenview Drive S.W., Rochester, MN 55902, counsel
     for plaintiff.

     Alan L. Rupe, Esq., Douglas W. Peters, Esq., Jason D.
     Stitt, Esq. and Kutak Rock LLP, 1605 North Waterfront
     Parkway, Suite 150, Wichita, KS 67206, counsel for
     defendants.


     This matter is before the court upon the motion for summary judgment by defendants Schwan's Home Service, Inc. and The Schwan Food Company (collectively, Schwan's). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.


                              **BACKGROUND**

     This employment dispute arises out of the termination of plaintiff Jeff Knutson by Schwan's in February 2009. Through its various entities, Schwan's manufactures frozen foods in several states, then transports those products to regional distribution centers for delivery to local depots. The local depots then

deliver the products to consumers, using delivery trucks with a gross vehicle weight rating (GVWR) of between 10,001 and 26,000 pounds.

Knutson began working for Schwan's in 1998 and was promoted to district general manager in 2005.  In May 2007, Schwan's terminated Knutson because "his region was moving in a different direction." Knutson Dep. 88:16–89:2.  Schwan's rehired Knutson in July 2007 as the location general manager of the Zumbrota, Minnesota depot. Thereafter, the depot became more productive.

Knutson's employment was conditioned upon his meeting the standards of the U.S. Department of Transportation (DOT)[1] and Schwan's for motor-vehicle records, physical examination and functional-capacity testing.  The position description requires location general managers to meet DOT "eligibility requirements, including appropriate driver's license and corresponding medical certification." Id. Ex. 20.  Schwan's policy states that "when an injury can affect the DOT status or medical status or health status, at that point ... a DOT employee needs to seek out medical attention and see if they can obtain a medical card." See Hunstad Dep. 39:21–40:5; Evert Dep. 29:21–31:10.

The DOT requires a person to be medically certified to operate a commercial motor vehicle, or obtain a medical variance from the Federal Motor Carrier Safety Administration.   49 C.F.R.

---

[1] All references to the DOT in this order are to the U.S. DOT.

§ 391.41(a)(1), (a)(3).  To be certified, a person must have distant visual acuity of at least 20/40 — or corrected to at least 20/40 — in each eye, distant binocular acuity of at least 20/40 using both eyes, a horizontal field of vision of at least 70 degrees in each eye and the ability to distinguish the colors of traffic signals.  Id. § 391.41(b)(10).  A person must renew the medical examiner's certificate every 24 months or whenever the "ability to perform his/her normal duties has been impaired by a physical or mental injury or disease." Id. § 391.45.

When he began work as a location general manager, Knutson was DOT qualified and had obtained a medical-examiner's certificate valid through July 2009.  At first, he drove delivery trucks as part of training and managing the staff at Zumbrota.  According to Knutson, he last drove a delivery truck for Schwan's on November 7, 2007.  Pl.'s Mem. Opp'n 1, 3.  But see Knutson Dep. 295:5–15.[2] Thereafter, when he delivered products for Schwan's, he used his personal car.  Pl.'s Mem. Opp'n 3.

In March 2008, Knutson suffered a penetrating eye injury. Following surgery, he reported to his supervisor, Jed Hunstad, that his prognosis ranged from having no vision in the affected eye to 20/20 vision.  Ultimately, Knutson had three surigical procedures, each involving injection of a bubble into his eye to stabilize his

---

[2] For purposes of this motion, the court assumes that Knutson did not drive a Schwan's delivery truck after November 7, 2007.

3

retina. While the bubbles were present, the outcome of each procedure was uncertain. Hoping that Knutson would recover, Hunstad did not report the injury to human resources. Hunstad Dep. 29:5–33:1.

In late 2008, Hunstad reported the injury to Roger Evert in human resources. Id. at 34:21–35:4. According to Knutson, Schwan's sent him to a local clinic for a fitness-for-duty exam, and the doctor referred Knutson for further consultation. As a result, the second doctor concluded:

> Uncorrected vision in each eye is 20/20 in the right at distance; 20/400 at distance in the left, 20/15 both together. Corrected vision shows the right eye to have 20/15 vision, the left eye 20/200 vision at distance. Near vision is 20/25 with both eyes together. A full field 120 point screening visual field test was given today. His right eye shows normal fields. Left eye shows depression on temporal aspect and inferior aspect causing decreased fields in these areas limiting his field to approximately 60 to 70 degrees ....

Knutson Dep. Ex 11. The doctor further opined that Knutson "has exceptionally good vision in his right eye and reasonably wide visual fields using both eyes together" and that he "would be safe to operate a motor vehicle." Id. The doctor did not, however, give Knutson a medical-examiner's certificate or waiver.[3] Knutson told Hunstad about his results.

---

[3] Knutson admits that he was not qualified for a certificate because his left-eye vision was less than 20/40. See Knutson Dep. 143:15–17.

4

Schwan's notified Knutson that due to his injury, he would be placed on a 30-day leave in which to obtain a new medical-examiner's certificate or apply for non-DOT-qualified positions within Schwan's. Knutson Dep. Ex. 14. During his leave, Knutson did not visit a physician to seek a medical-examiners certificate or secure a waiver. Id. at 30:13–34:1; 47:3–48:14. Knutson applied for two positions within Schwan's, but was not offered the positions. Id. at 34:2–13. Evert contacted Knutson shortly before the 30-day period ended because he had not heard from Knutson. Evert Dep. 85:9–863; Knutson Dep. 260:15–18. Knutson replied that there was nothing with which Evert could assist him. Knutson Dep. 276:14–277:2. On February 9, 2009, Schwan's terminated Knutson's employment.

Knutson filed a charge of discrimination with the Equal Employment Opportunity Commission. After receiving a right-to-sue letter, Knutson timely filed the present action in Minnesota court. Knutson claims disability discrimination in violation of the Americans with Disabilities Act (ADA) and the Minnesota Human Rights Act (MHRA), breach of contract and failure to pay wages upon discharge in violation of Minnesota Statutes § 181.13. Schwan's removed and now moves for summary judgment.

**DISCUSSION**

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

The court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party must set forth specific facts sufficient to raise a genuine issue for trial; that is, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 249-50; Celotex v. Catrett, 477 U.S. 317, 324 (1986). Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment, because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**I.   Disability Discrimination**

The ADA and MHRA prohibit employers from discriminating against individuals on the basis of disability. 42 U.S.C. § 12112;

Minn. Stat. § 363A.08, subdiv. 2. The court analyzes ADA and MHRA claims under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Dovenmuehler v. St. Cloud Hosp., 509 F.3d 435, 439 n.4 (8th Cir. 2007).[4] To establish a prima facie case of disability discrimination, a plaintiff must show that (1) he was disabled; (2) he was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he suffered an adverse employment action due to his disability. See Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003).

Congress amended the ADA effective January 1, 2009, to "supersede the Supreme Court's prior admonitions to consider the ameliorative effects of mitigating measures ... and to construe narrowly the ADA's 'substantially limits' language" when determining whether a person is disabled. Kirkeberg v. Canadian Pac. Ry., 619 F.3d 898, 904 n.2 (8th Cir. 2010) (citations omitted) (applying version of ADA prior to 2008 amendments); see also ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2, 122 Stat. 3553, 3553-54 (rejecting standard for "substantially disabled" as interpreted by Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002)). The adverse employment action in the present action occurred after January 1, 2009, and therefore

---

[4] Failure-to-accommodate claims are subject to a modified burden-shifting framework.

the court addresses Knutson's claims under the amended Act and regulations.

**A.   Disability**

The term "disability" means 1) a physical or mental impairment that substantially limits one or more major life activities, 2) a record of such impairment, or 3) being regarded as having such an impairment. 42 U.S.C. § 12102(1);[5] see also Minn. Stat. § 363A.03, subdiv. 12 (defining disabled person in terms of physical, sensory or mental impairment).[6] There is no serious dispute that Knutson's injury is a physical impairment that affects the major life activity of seeing. See 29 C.F.R. § 1630.2(h)-(i) (2011). The parties disagree, however, about whether Knutson's impairment substantially limits his ability to see.

---

[5] All references to the ADA are to the amended version of the ADA.

[6] The analysis of claims under the ADA and MHRA is the same, except that the MHRA applies a "materially-limiting" standard which was less stringent than the pre-amendment ADA standard of "substantially limiting." See Kirkeberg, 619 F.3d at 908 (citing Sigurdson v. Carl Bolander & Sons, Inc., 532 N.W.2d 225, 228 (Minn. 1995)). Minnesota does not define "materially limiting" and uses federal antidiscrimination statutes for guidance. McLain v. Anderson Corp., 567 F.3d 956, 967 (8th Cir. 2009). The court does not determine how the Minnesota standard compares to the post-amendment federal standard, because Knutson makes no argument that he might be materially limited rather than substantially limited. Therefore, the court analyzes the state and federal claims under the lower, amended ADA standard.

"An impairment is a disability ... if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." Id. § 1630.2(j)(1)(ii). The standard for determining whether an impairment substantially limits a major life activity is not demanding, and requires a lesser degree of limitation than the standard applied before the ADA Amendments Act. Id. § 1630.2(j)(1)(iv). Although an impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity ... not every impairment will constitute a disability...." Id. The court broadly construes the term "substantially limits" in favor of expansive coverage. Id. § 1630.2(j)(1)(1).

The court performs an individualized assessment to determine whether an impairment substantially limits a major life activity. Id.; see 42 U.S.C. § 12102(4)(E)(i)(IV) (determination made without regard to learned behavioral or adaptive neurological modifications); cf. Kirkeberg, 619 F.3d at 903–04. A plaintiff must show more than a "mere difference," but vision need not be "severely restrict[ed]" compared to that of an average individual. See Kirkeberg, 619 F.3d at 903; see also ADA Amendments Act of 2008 § 2(a)(7), (b)(4)–(5). A person with monocular vision "ordinarily will meet the Act's definition of disability" but a plaintiff must produce evidence of a substantial loss to depth perception or

9

visual acuity. Kirkeberg, 619 F.3d at 904 ("[A]n individualized showing of a substantial limitation is essential because of the differences that exist between people with [monocular vision]."); see Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566–67 (1999). The court may not take mitigating measures into account other than ordinary eyeglasses or contact lenses. 29 C.F.R. § 1630.2(j)(1)(vi)

Schwan's argues that Knutson fails to provide evidence that he has a loss of depth perception or visual acuity. An optometrist who examined Knutson in December 2008 determined that he had uncorrected 20/15 vision at distance and corrected 20/25 near vision with reduced field of view in his left eye. Knutson Dep. Ex. 11. The optometrist stated that since Knutson "has exceptionally good vision in his right eye and reasonably wide visual fields using both eyes together, he would be safe to operate a motor vehicle and perform[] safely on all driving tasks." Id. According to Knutson, he cannot wear corrective lenses because they cause double vision. Id. at 158:12-24. The evidence shows that although Knutson has anywhere from 20/150 to 20/80 vision in his left eye, his overall vision is excellent. There is no evidence that he lacks depth perception, and he continues to drive. In short, viewing the evidence in the light most favorable to Knutson, he fails to provide evidence from which a reasonable jury could find more than a mere difference in his vision compared to others.

As a result, Knutson fails to show that he is substantially limited compared to most people in the general population. Therefore, Knutson has not shown that he is disabled for purposes of the ADA or MHRA, and summary judgment is warranted.

### B. Essential Functions of the Job

Even assuming Knutson were disabled for purposes of the ADA and MHRA, summary judgment is also warranted because Knutson fails to show that he is qualified to perform the essential functions of the job of location general manager. Under the ADA, "[a]n individual is qualified if he satisfies the requisite skill, experience, education, and other job-related requirements and 'can perform the essential job functions, with or without reasonable accommodation.'" Rehrs v. Iams Co., 486 F.3d 353, 356 (8th Cir. 2007) (quoting Cravens v. Blue Cross & Blue Shield of Kan. City, 214 F.3d 1011, 1016 (8th Cir. 2000)). An employer bears the burden of showing that a particular function is essential. See Benson v. Nw. Airlines, Inc., 62 F.3d 1108, 1113 (8th Cir. 1995). "Essential functions of the job are fundamental job duties, and the employer's judgment in this regard is considered highly probative." Duello v. Buchanan Cnty. Bd. of Supervisors, 628 F.3d 968, 972 (8th Cir. 2010) (citation and internal quotation marks omitted).

Schwans argues that being DOT qualified to drive delivery trucks was an essential function of the job of location general manager. Knutson responds that being DOT qualified was not an

essential function of his job because the Zumbrota delivery vehicles do not operate in interstate commerce, the vehicles are not commercial motor vehicles, his job did not require him to drive delivery vehicles, and Schwan's could have accommodated him by allowing him not to drive delivery vehicles.  The court addresses each argument.

### 1.   Interstate Commerce

Knutson first argues that being DOT qualified to drive commercial vehicles was not an essential part of his duties because the vehicles do not operate in interstate commerce.  In support, Knutson argues that Schwan's Home Service is only one of several related Schwan's entities, and that Schwan's Home Service operates only within the borders of Minnesota.  In Guyton v. Schwan Food Co., this court addressed the question of interstate commerce and driving duties of location general managers in the context of the Motor Carrier Act exemption to the Fair Labor Standards Act.  See No. 03-5523, 2004 WL 533942, at *4 (D. Minn. Mar. 16, 2004) (Frank, J.), aff'd, 125 F. App'x 84, 85 (8th Cir. 2005).  The court finds the reasoning of Guyton persuasive.  As in Guyton, the Schwan's entities manufacture products in several states and those products move rapidly through distribution centers and local depots to consumers.  Schwan's has a "fixed and persistent intent" to ship and deliver its products in interstate commerce, and therefore, the "intrastate transport of Schwan food products is one leg of an

12

interstate journey." <u>Id.</u> at *5. Therefore, Schwan's Home Service vehicles operate in interstate commerce, and Knutson's argument fails.

### 2.   Commercial Motor Vehicles

Knutson next argues that DOT qualification to drive commercial motor vehicles is not an essential job function because the Zumbrota delivery vehicles are not commercial motor vehicles as defined by DOT regulations. Schwan's acknowledges that the regulations do not require a commercial driver's license (CDL) to operate the delivery vehicles, because the vehicles have a GVWR of less than 26,001 pounds. According to Schwan's, the delivery vehicles are nonetheless commercial motor vehicles under DOT regulations.

DOT regulations define a commercial motor vehicle as a vehicle with a GVWR of 10,001 pounds or more, "unless specifically defined elsewhere." 49 C.F.R. § 390.5. The section setting forth the CDL requirement defines commercial motor vehicle differently: the regulations only require a CDL for commercial motor vehicles that have a GVWR of more than 26,001 pounds. <u>See</u> <u>id.</u> § 383.5. The definition of commercial motor vehicle for purposes of the CDL requirements, however, does not control other regulations. As a result, even if the DOT regulations do not require a CDL to operate

the Zumbrota delivery vehicles, they are still commercial motor vehicles for other DOT purposes, such as a requiring a medical-examiner's certificate.

The physical-qualifications requirement for a medical-examiner's certificate applies to all commercial motor vehicles. See id. § 391.41(a). Indeed, the language of section 391.41 shows that the DOT intends for the physical and medical requirements to apply a larger class of commercial motor vehicles than those that require a CDL. See id. § 391.41(a)(2) (imposing different carrying requirements for medical-examiner's certificate for CDL drivers and non-CDL drivers). Thus Knutson's argument fails, and persons who drive Schwan's delivery trucks are subject to DOT physical and medical requirements.

### 3. Essential Functions

Knutson also argues that driving a delivery truck was not an essential function of his job as a location general manager. A function is essential when the position exists to perform that function, the function may be only performed by a limited number of employees or it requires special expertise. 29 C.F.R. § 1630.2(n)(2). In addition to the judgement of an employer, other evidence of essential functions includes written job descriptions, amount of time spent performing the function, consequences of not

performing the function and current work experience of others in similar jobs. Id. § 1630.2(n)(3); Dropinski v. Douglas Cnty., Neb., 298 F.3d 704, 707 (8th Cir. 2002) (citations omitted).

According to Knutson, beginning months before his injury, and for over a year before his termination, he did not drive a Schwan's delivery truck as a location general manager. Instead he argues that he did not need to drive a truck as a location general manager because he had overstaffed the depot and he delivered Schwan's products in his personal vehicle. See Pl.'s Mem. Opp'n 3. But see Knutson Dep. 290:5-21. Moreover, Knutson names several past location general managers who he heard were blind in one eye or otherwise not DOT certified.

In contrast, other Schwan's employees confirm that location general managers are required to drive trucks, for example "if [Schwan's] didn't have sufficient staffing on a given date to run all of the routes, generally the location general manager is responsible for making sure those routes get run. Not running a route was not acceptable." Evert Dep. 13:1-5. It is "not uncommon" for location general managers to drive trucks to run routes or train new employees, in fact it happens "frequently." Id. at 13:18-14:4; see Thompson Decl. ¶ 4.

Moreover, Knutson's employment offer states that it "is expressly conditioned on your meeting U S [sic] Department of Transportation and [Schwan's] standards for a ... physical

15

examination." Knutson Dep. Ex. H, ECF No. 18-9. Further, the position description for a location general manager states as a qualification: "Must meet the Federal Department of Transportation eligibility requirements, including appropriate driver's license and corresponding medical certification as a condition of employment for this position." Id. Ex. 20. Therefore, the court finds that being DOT qualified to drive a delivery truck was an essential function of Knutson's job.

Knutson states that the unresolved injury meant that he would not pass a medical examiner's exam. Knutson Dep. 142:20–143:17. The injury triggered DOT regulations and Schwan's rules that he be "medically examined and certified" before the 24-month existing medical examiner's certificate expired. Knutson did not obtain a new medical examiner's certificate or a waiver and therefore, he could not perform the essential job function of being qualified to drive the delivery vehicles.

### 4. Reasonable Accommodations

Knutson next argues that Schwan's failed to accommodate him because it refused to allow him to continue working as a location general manager without driving. Pl.'s Mem. Opp'n 25. Knutson bears the initial burden "only to show that the requested accommodation is reasonable on its face, *i.e.*, ordinarily or in the run of cases." Peebles v. Potter, 354 F.3d 761, 768 (8th Cir. 2004) (citation and internal quotation marks omitted). Upon such

16

a showing, Schwans must then "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." Id.

Reallocating "the marginal functions of a job" may be a reasonable accommodation; however, it is well settled that "[a]n employer need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee." Dropinski, 298 F.3d at 710. In the present action, Knutson argues that eliminating the essential function of driving from his job is reasonable because, in the past, other location general managers retained their positions with visual impairments. Even if evidence of these alleged occurrences were not hearsay, they happened several years before Knutson's termination. The record shows that Schwan's changed its policy about DOT qualification at some point in 2004 or 2005. See Evert Dep. 20:17–21:11. Review of the record shows that Knutson has not introduced admissible evidence of a non-DOT-qualified location general manager after the change in policy, and Knutson's argument fails. Therefore, summary judgment is also warranted based on Knutson's lack of qualification to perform an essential job function.

### III. Breach of Contract

Knutson claims that Schwan's is contractually obligated to pay him "vacation pay, severance pay and mileage." Under Minnesota law, a breach of contract claim requires the plaintiff to establish

formation of a contract, performance of conditions precedent and a breach. Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 833 (Minn. 2011). In the present action, Knutson testified that there is no contract entitling him to "vacation pay, severance pay, and mileage." See Knutson Dep. 185:19-186:5. As a result, Knutson fails to provide evidence that a contract formed, and summary judgment is warranted.

**IV.  Minnesota Payment of Wages Act**

Knutson also argues that he is entitled to vacation and severance pay, mileage and a 2008 bonus under Minnesota Statutes § 181.13. When an employer discharges an employee, "the wages or commissions actually earned and unpaid at the time of the discharge are immediately due and payable upon demand of the employee." Minn. Stat. § 181.13. Section 181.13 "is a timing statute, mandating not *what* an employer must pay a discharged employee, but *when* an employer must pay a discharged employee." Lee v. Fresenius Med. Care, Inc., 741 N.W.2d 117, 125 (Minn. 2007). Wages earned "are defined by the employment contract between the employer and the employee." Id. at 127.

Knutson acknowledges that he has no contractual right to "vacation pay, severance and mileage." As a result, those categories of compensation are not wages actually earned for purposes of section 181.13, and summary judgment is warranted as to vacation pay, severance and mileage.

18

As to Knutson's bonus under the 2008 annual incentive plan, the plan states that location general managers are eligible if they are "an employee in good standing (i.e. in compliance with all applicable laws and company rules, regulations and policies) with [Schwan's] through the date payment is made." Knutson Dep. Ex. 10, at A00584. An exception exists for location general managers who suffer a "total disability as defined under the Schwan's long-term disability plan." Id. Knutson fails to provide the the definition of total disability from the plan, and admits that he never applied for or received short- or long-term disability. As a result, Knutson fails to show that he had a total disability, and summary judgment is warranted as to the annual incentive plan.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 16] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  April 27, 2012

                                              s/David S. Doty
                                              David S. Doty, Judge
                                              United States District Court